John P. Gualtieri, P. J.
This claim was filed in the office of the Clerk of the Court of Claims on October 1, 1959, and has not been assigned or submitted to any other court or tribunal for audit or determination.
Pursuant to section 30 of the Highway Law, and acts amendatory thereof, the State of New York duly appropriated in fee 6,898 square feet or 0.158 acre of claimant’s property as described on Map No. 21, Parcel No. 37 in connection with “ Interstate Route Connection 530 (Kingston Bast-West Route) ”. This was a total taking.
The appropriation map for the taking described was filed in the office of the Secretary of State on December 5, 1958 and in the office of the Clerk of the County of Ulster on March 11, 1959.
The court adopts the description of the appropriated property shown and set forth on the map and the description filed in *907 the Clerk’s office as aforesaid and reference is hereby made thereto for such description Avithout repetition thereof.
The claimant was the sole OAvner of the property herein.
The property was situated in the City of Kingston, Ulster County, at the intersection of Albany Avenue and Broadway having a frontage of 167 feet on Albany Avenue and a frontage of 151 feet on Broadway. The property was triangular in shape varying in depth from approximately 3 feet at the intersection of Albany Avenue and BroadAvay at the westerly boundary to an irregular depth of approximately 85 feet at the most easterly boundary of the property. The property comprised the westerly end of a triangular island having Albany Avenue and Broadway for its sides and St. James Street for its base.
The property is situated in a commercial zone of the City of Kingston. It occupies a very valuable location because of its frontage on two heavily travelled streets and at the junction of U. S. Route 209 and New York Route 28 and also the road leading to Route 9W. Although the property does not have great depth, its location on major traffic arteries gives it a uniqueness and it could be developed for substantial commercial purposes.
The improvements on the property consisted of a single-family residence, a two-family residence, a store building Avith apartments and a small shed or storehouse. All the property was leased at the time of the appropriation. A proper commercial development of the site would require the destruction of these structures.
The court has concluded that the highest and best use of the property would be as a gas station or similar commercial establishment. Experts for both sides agreed with this determination of commercial development as the most valuable use of the property. Despite this agreement on use, there was a wide diversion in the value. The State’s expert fixed a value of $7.50 a square foot while the claimant’s expert testified to a value of $14 a square foot, or a difference of 93%. The court in light of the unique location above described, the proximity to residential and commercial neighborhoods and comparable sales finds that the fair market value of the property is $10 a square foot or $68,980 for the 6,898 square feet. From this sum there is to be deducted the cost of demolition of $2,000. The damages sustained by the claimant, therefore, are $66,980.
The court has viewed the premises.
The evidence in this case prompts the court to admonish the real estate profession, as well as the Bar, as to their responsi *908 bility to the court and to themselves in litigation of this character.
The claimant’s expert testified that in his opinion the claimant’s property had a fair market value of $93,500. On cross-examination he admitted that his original appraisal for this same property in connection with this same litigation was in the sum of $75,000.
The State’s expert swore that the fair market value was $49,700. On cross-examination he too had to admit that the first appraisal he had given the State for this same property was $57,000.
It may be that in the same lawsuit both appraisers revised their figures upwards or downwards because they later discovered some error leading them to change their conclusions.
Unfortunately, however, this happens all too often. No self-respecting expert, conscious of the ethics and standards of his profession should change an opinion, honestly and properly arrived at at the behest of the party engaging him. Certainly an expert may and perhaps should, if he accepts an assignment, give the side selecting him the most favorable, honest limit of his professional judgment but he does himself, his client and the court a disservice if he alters his opinion at the behest of a litigant.
This court has said repeatedly, that a citizen whose property is taken away without his consent is entitled to receive by either direct negotiation with the condemnor or through a court decree the top honest dollar — no more and no less. The condemning authority has no moral right to seek out cheap or low appraisals but should be willing and prepared to pay the property owner full and just compensation. Those representing the property owner are just as guilty if they seek to obtain experts who will testify to exorbitant and unbelievable values.
The practice of tampering with opinions of experts, as may or may not have occurred in this case, must be condemned. It is not honorable, it helps no one and it merely adds to the burdens of the court. So long as it continues court calendars will continue to be unnecessarily congested.
If the two original appraisals, $75,000 for the claimant and $57,000 for the State had been left alone, provided they represented the true, honest opinion of both, the difference between them was such that an out-of-court settlement could have been easily arrived at. This ease which has been pending since October of 1959 could have been disposed of long ago without the resultant expense of litigation which has certainly been costly to both the claimant and the State and the State would not be *909 obliged to pay the staggering sum of $13,000 in legal interest for the five years that this case has remained on the court calendar.
All too often the court’s awards in appropriation cases are criticized because it is alleged that the amount awarded is somewhere in between the two figures testified to by the experts on each side. This feeling may have led to the practice of the parties in presenting exaggerated values thus hoping that the court in arriving at a compromise figure will strike a balance between them. Judges and courts are not expected to be experts in this field. They must depend upon the guidance of competent witnesses appearing before them. It is hoped that appraisers will acquire the habit of presenting honest and realistic appraisals and give the court an opportunity to accept the opinion of one or the other without forcing it to arrive at a conclusion of its own unaided by the exaggerated claims of either party.
The claimant is hereby awarded the sum of $66,980 as damages, with interest on said sum from March 11,1959 to September 11, 1959 and from October 1, 1959 to date of entry of judgment herein.
The award to the claimant herein is exclusive of the claims, if any, of persons other than owners of the appropriated property, their tenants, mortgagees and lienors having any right or interest in any stream, lake, drainage and irrigation ditch or channel, street, road, highway, or public or private right of way or the bed thereof within the limits of the appropriated property or contiguous thereto; and is exclusive also of claims, if any, for the value of or damage to easements and appurtenant facilities for the construction, operation and maintenance of publicly owned or public service electric, telephone, telegraph, pipe, water, sewer and railroad lines.